IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTHONY JONES | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:21-CV-2917 |
| | § |
| | § |
| KROGER TEXAS L.P. | § |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Anthony Jones, ("Plaintiff," "Mr. Jones"), and files this Response to Defendant Kroger Texas L.P.'s, ("Kroger"), Motion for Summary Judgment, ("MSJ," Doc. 10); and, in support thereof, he respectfully provides this Court with the following:[1]

**I.
TABLE OF CONTENTS**

I.   TABLE OF CONTENTS…………………………………….......................... i

II.  INDEX OF AUTHORITIES……………………………………………….. iii

III. WAIVER AND ABANDONMENT OF GROSS AND
     MALICIOUS NEGLIGENCE CLAIM…………………………………….. 1

IV.  INTRODUCTION AND SUMMARY OF RESPONSE………………………. 1

V.   MSJ RESPONSE EVIDENCE……………………………………………... 7

VI.  SUMMARY OF MSJ RESPONSE FACTS………………….................................8

VII. SUMMARY JUDMENT STANDARD…………………………………….13

VIII.    ANALYSIS, ARGUMENT AND AUTHORITIES…………………………..15

[1] In Defendant Kroger's instant MSJ it has elected to use a page 1 "cover sheet" typical of appellate filings. Plaintiff finds no such requirement in the Southern District's Local Civil Rule 7.1 or in this Court's Procedure Sec. VII, "Briefs," therefore no such cover sheet is herein included. Should this Court feel such would be helpful to instant summary judgment analysis, Plaintiff will be pleased to promptly file an amended version of this Response with such included as soon as he is requested or instructed to do so.

A.  Plaintiff Mr. Jones is permitted by Texas law to assert concurrent claims based upon premises liability and common law negligence. …………………………………………………………………......................15

B.  Plaintiff Mr. Jones states a valid *prima facie* premises liability claim. …………………………………………………………………......................17

C.  Plaintiff Mr. Jones has established *prima facie* causation as to premises liability. …………………………………………………………………………..20

D.  Plaintiff Mr. Jones states a viable *prima facie* common law negligence claim and causation related thereto. …………………………………………………………………………..23

CONCLUSION…………………………………………………………...........................24

CERTIFICATE OF SERVICE…………………………………………………………26

## II.
## INDEX OF AUTHORITIES

**CASES**                                                              Page

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)…………………….....4, 6, 14, 15

*Apache Corp. v. W&T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010)……………………14

*Bellamy v. Wal-Mart Stores, Texas, LLC,* C.A. No. SA-18-CV-60-XR,

   2019 WL 3936992, *5, (slip op.), (W.D. Tex. Aug. 19, 2019)……………………………19

*Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007)…………………………….22

*Brookshire Bros., Ltd. v. Aldridge,* 438 S.W.3d 9, 15-16 (Tex. 2014)

   (same [citing *Reese*])…………………………………………………………………18

*Brown*, 80 S.W.3d at 556 (citing *Seideneck v. Cal Bayreuther Assocs.*,

   451 S.W.2d 752, 754 (Tex. 1970)…………………………………………………21

*Caboni v. Gen. Motors Corp.,* 278 F.3d 448, 451 (5th Cir. 2002)…………………………14

*Caldwell v. Curioni,* 125 S.W.3d 784, 793 (Tex.App.- Dallas 2004, pet. denied)………......22

*Carroll v. Fort James Corp.,* 470 F.3d 1171, 1176 (5th Cir. 2006)………………………....7

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)………………………………….4, 6, 14

*City of El Paso v. Viel*, 523 S.W.3d 876, 895 (Tex.App.- El Paso 2017, no pet.) ………......21

*Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970) …………………………….........22

*CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000)……………………………….20

*Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 454 (5th Cir.2005)………………......14

*Corbin v. Safeway Stores Inc.,* 648 S.W.2d 292, 295–96 (Tex.1983)………………………18

*Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659, 666 (Tex.App.- Dallas 2011,

   rev. denied)…………………………………………………………………………23, 24

*Diamond Offshore Services Ltd. v. Williams,* 542 S.W.3d 539, 550, n. 40 (Tex. 2018)…........4

*Digital Filing Systems, L.L.C. v. Mims,* No. 4:05cv465, 2007 WL 2692044, *2,

   (mem. op.), (E.D. Tex. Sept. 11, 2007)…………………………………………...… 4, 6

*Dominquez v. Target Corp.,* C.A. 5:18-CV-23, 2019 WL 1004569, *4, (slip op.),

   (S.D. Tex. Feb. 8, 2019)…………………………………………………...….........19

*D'Onofrio V. Vacation Publications, Inc.,* 888 F.3d 197, 208 (5th Cir. 2018)……………..7

*Garcia v. Wal-Mart Stores Texas, L.L.C.,* 893 F.3d 278, 278-9, 279-80 (5th Cir. 2018)....19, 20

*Glover v. Costco Wholesale Corp.*, 153 F. App'x 774, 776 (2d Cir. 2005).…………......... 5

*Grynberg v. BP P.L.C.,* 855 F.Supp. 2d 625, 640 (S.D. Tex. 2012) *aff'd,* 527

   Fed.Appx. 278 (5th Cir. June 7, 2013)……………………………………….........15

*Haney v. Jerry's GM, Ltd.,* 346 S.W.3d 597, 599-600 (Tex.App.-

   El Paso 2009, no pet.)………………………………………………………........... 17

*Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458–59 (Tex.1992)……………...23, 24

*Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 54 (S.D.N.Y. 2014)…………………………… 5

*Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014)……………………….............19

*In re Molina,* 575 S.W.3d 76, 82 (Tex.App.- Dallas 2019, reh'g denied,

   manda. denied)……………………………………………………………………..22

*Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992)………………………………..18

*Kessler v. Fanning*, 953 S.W.2d 515, 522 (Tex.App.- Fort Worth 1997, no pet.)…………4

*Knorpp v. Hale*, 981 S.W.2d 469, 474 (Tex.App.- Texarkana 1998, no pet.)…………....22

*Kroger Co. v. Milanes,* 474 S.W.3d 321, 338 (Tex.App.- Houston [14th Dist.]

   2015, no pet.)…………………………………………………………………22, 23

*Lincoln Gen. Life Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005)…………............4, 6

*LMB, Ltd. v. Moreno,* 201 S.W.3d 686, 688 (Tex. 2006)……………………….............20

iv

*Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003)………………………………..20

*McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017)…………………..19

*McMillan v. Hearne,* 584 S.W.3d 505, 514 (Tex.App.- Texarkana 2019, no pet.)…………22

*McMurray v. ProCollect, Inc.,* 687 F.3d 665, 669 (5th Cir. 2012)……………….....................14

*Odyssey Marine Explora., Inc. v. Shipwrecked and Abandoned SS Mantola,*

  425 F.Supp.3d 287, 292-3 (S.D.N.Y. 2019)………………………………………….. 4

*Primoris Energy Services Corp. v. Myers,* 569 S.W.3d 745, 755-56 2018

  (Tex.App.-Houston [1ˢᵗ Dist.] 2018, no pet.)……………………………………16-17

*Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935 (Tex.App.- Texarkana 1997,

  writ denied)……………………………………………………………,,,,,,,,,,,;;…22

*Rice v. ReliaStar Life Ins. Co.,* 770 F.3d 1122, 1129 (5th Cir. 2014)………………………15

*Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir.2004)

  (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)…………………………4, 6

*Rodriguez v. Cemex, Inc.,* 579 S.W.3d 152, 164 (Tex.App.- El Paso 2019,

  no pet.)…………………………………………………………………………21

*Rosario Dominguez v. Target Corp.,* C.A. No. 5:18-CV-23, 2018 WL 8583800,

  *2, (slip op.), July 25, 2018)………………………………………………………19

*Russell Equestrian Ctr., Inc. v. Miller,* 406 S.W.3d 243, 249 (Tex.App.-

  San Antonio 2013, no pet.)………………………………………………….. 23

*Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016)……………………17

*Sibai v. Wal–Mart, Stores, Inc.,* 986 S.W.2d 702, 705–06 (Tex.App– Dallas 1999,

  no pet.)…………………………………………………………………………17

*Tex. Dept. of Transp. v. Padron,* 591 S.W.3d 684, 697 (Tex.App.- Texarkana 2019,

    rev. denied)………………………………………………………………………..21

*Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014)…………………………………………..14

*Trent v. Wade,* 776 F.3d 368, 377 (5th Cir. 2015)………………………………………14

*Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 482 (5th Cir.2000) …..14

*United Scaffolding, Inc. v. Levine,* 537 S.W.3d 463, 473, 474 (Tex. 2017) ...………………17

*United States v. Renda,* 709 F.3d 472, 478 (5th Cir. 2013) ………………………………..15

*Univ. of Tex. M.D. Anderson Cancer Center v. McKenzie,* 578 S.W.3d 506, 518

    (Tex.2019)……………………………………………………………………………. 22

*Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 452 (S.D.N.Y. 2012),

    *aff'd,* 511 F. App'x 57 (2d Cir. 2013)…………………………………………………. 5

*Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 935-6 (Tex. 1998)……………… 18, 21

*Wal-Mart Stores, Inc. v. Reese,* 81 S.W.3d 812, 814 (Tex. 2002)………………………….18

*West v. SMG,* 318 S.W.3d 430, 438 (Tex.App.- Houston [1st Dist.] 2010, no pet.)…………15

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 10(c)………………………………………………………………7

Fed. R. Civ. P. 56 …………………………………………………………………...13

Fed. R. Civ. P. 56(a) ………………………………………………………………..14

Fed. R. Civ. P. 56(c) ………………………………………………………4, 6, 7

**MISCELLANEOUS**

First Emergency Order Regarding the Covid-19 State of Disaster, Sup. Ct. Misc.

    Docket No. 20-9042 …………………………………………………………... 10

Eighth Emergency Order Regarding the Covid-19 State of Disaster, Sup. Ct. Misc.

  Docket No. 20-9051………………………………………………………………10

Twelfth Emergency Order Regarding the Covid-19 State of Disaster, Sup. Ct. Misc.

  Docket No. 20-9059………………………………………………………………10

Seventeenth Emergency Order Regarding the Covid-19 State of Disaster, Sup. Ct. Misc.

  Docket No. 20-9071………………………………………………………………10

Eighteenth Emergency Order Regarding the Covid-19 State of Disaster, Sup. Ct. Misc.

  Docket No. 20-9080………………………………………………………………10

### III.
### WAIVER AND ABANDONMENT OF GROSS
### AND MALICIOUS NEGLIGENCE CLAIM

1.       Defendant Kroger's instant MSJ, (Doc. 10), seeks summary dismissal of all of the liability claims asserted against it, which include claims based upon common law negligence, premises liability and gross and malicious conduct. Before proceeding herein to respond to the MSJ in other particulars, ***Mr. Jones confirms that he and his undersigned counsel have carefully reviewed to facts of this case and the current, prevailing law applicable thereto, and based thereupon Plaintiff hereby waives and withdraws his claim based upon Defendant Kroger's malicious and grossly negligent conduct, and Plaintiff does not contest this Court's dismissal of that liability claim with prejudice <u>only</u>.*** [2]

### IV.
### INTRODUCTION AND SUMMARY OF RESPONSE

2.       At the very least, Kroger's instant MSJ is prematurely filed as the discovery deposition of Kroger's lone eye-witness to Plaintiff's fall and injury and an active participant in such incident, Mauricio Martinez, has been agreeably noticed to occur on Tuesday, November 1, 2022. Such notice was transmitted to defense counsel on September 20, 2022, well before Kroger filed its instant MSJ on October 14, 2022. Defendant Kroger knows full well that the transcript of that deposition will in overwhelming likelihood not be available before the current deadline for Plaintiff's filing of an MSJ Response by Friday, November 4, 2022.  Such likely unavailability becomes quite significant in light of the factors next discussed.

3.       Subject to Plaintiff's waiver and abandonment of his gross negligence claim, the rest and remainder of Defendant Kroger's instant MSJ is fatally defective and should be denied for the following seven (7) reasons. **First,** Kroger's MSJ nowhere contends that Plaintiff did not slip and fall in its store or that there was not present right where he fell a wet substance on the floor. Kroger simply asserts that Plaintiff can't say how

---

[2] Such claim is stated in Plaintiff's live pleading, her Original Petition, (Doc. 1-1, at ¶¶ 19-21, 27, Prayer, at (c), pg. 9).

1

long the water had been there or who put it there, which candidly is nonsense because Kroger knows full well from discovery in this case that Plaintiff had just entered the store and gone directly to the aisle where he fell virtually upon arrival there and he thus had no possible way to determine the condition of the aisle's floor or what had occurred in it before he arrived there. **Second,** neither Kroger's Incident Report completed by its store manager shortly after he fell, (MSJ App. Ex. 3), nor its instant MSJ makes any mention whatsoever about the presence of its employee who directed Plaintiff to the shelf where he feel and then stood within three to four feet of Plaintiff when he fell and his abject failure to either inspect the floor right around himself or to see and either mark or clean up the spilled fluid on the aisle's floor in which Plaintiff subsequently slipped and fell. **Third,** Kroger's neither Kroger's Incident Report nor its instant MSJ makes any mention whatsoever that: (1) the store had just opened before Plaintiff entered it to shop; and/or (2) that the store was not fully opened yet; and/or (3) that the store's overhead lights were not all fully on; and/or (4) it was improperly and unsafely dark in the aisle where Plaintiff fell, a condition verified by Kroger's own store video, (Response App. Ex. B). **Fourth,** Kroger completely ignores the very real probability that the stocker with whom Plaintiff talked within a minute of his fall actually created the fluid on the floor in which Plaintiff slipped and fell by spilling that fluid as he stocked bottles in the aisle. **Fifth,** while the core contention of Kroger's instant MSJ is that Plaintiff's negligence and premises liability claims must fail because Plaintiff cannot state who put the fluid on the floor or how long it had been there and such factors might be significant in a typical premises liability case, they matter little here because Kroger's own negligent employee in probability actually caused the condition in which Plaintiff fell or he negligently failed to see and correct it before Plaintiff fell. **Sixth,** even if said employee didn't create the spill, the store's managers and employees made such spill virtually impossible to see because the store's lights were not fully on yet, which condition Kroger had exclusive control over and may properly be held liable for. **Seventh,** while Kroger's store manager Zuniga contends he arrived where Plaintiff fell within a few minutes of said fall, (MSJ App. Tab B, Aff. of Zuniga, at ¶ 8), he did

2

not bother to take any photos of the area of Plaintiff's fall, or to mention that the lights were still not fully on and dim in that area, and he never bothered to view the store's own video, (Response App. Ex. B), which expressly confirms such deficient lighting at the time of Plaintiff's fall and injury.

4.      In supplement thereto, in MSJ App. Tac C, at 3, (KROGER/JONES 000003), Kroger's Incident Report, (Response App. Ex. C, at 3), Kroger's own form admonished the manager filling it out to, "Remember to check for video and to forward photos." (Id.). Since he neither took any photos of the injury scene or retrieved the video, it is all the more suspect that Kroger's instant MSJ glosses over such glaring defects entirely. That's why the pending deposition testimony of Kroger's lone fact witness, Martinez, is so important to this Court's full understanding of the facts of this case and why Kroger is obviously so anxious that this Court not have such testimony available.

5.      To avoid the complete facts of this case which clearly establish Kroger's active negligence and premises liability, Kroger's instant MSJ presents only the vaguest and selective evidence it believes helpful to its liability defense. However, Kroger's MSJ and this Response thereto show the existence of multiple material disputed facts and credibility issues pertaining thereto which are best left to consideration by the trier of fact and not by this Court in summary proceedings. *At most,* Kroger's MSJ presents only a one-sided, completely incomplete picture of this case. In doing so, it underscores that Plaintiff can and hereby does present an entirely different picture. Which side thereof is believable is for the jury to decide.

6.      For the reasons set out in this Response and based upon the evidence set out in the Response Exhibits included in Plaintiff's Appendix filed in support of this MSJ Response, (Doc. 11), Plaintiff Mr. Jones will show this Court that: (1) Kroger has entirely failed to show why, as a matter of either fact or law, it is entitled to summary judgment on Plaintiff's common law active negligence or premises liability claims; (2) Mr. Jones has stated a fully viable *prima facie* premises liability claims upon which he deserves his day in court in a trial by a jury of the Parties' peers; and, (3) Mr. Jones' *prima facie* premises liability claim and his common law

3

active negligence claim, and the evidence surrounding and supporting such claims are suffused with disputed facts, factual nuances and material, case-determinative factual and credibility issues best left to consideration by the trier of fact and not by this Court in summary proceedings.[3]

7.       Moreover, whether Plaintiff has correctly or incorrectly interpreted what the store's own surveillance video, (Response App. Ex. B), shows is not presently determinative because that goes to the weight to be ascribed to the video and it is up to the jury to decide that. See *Kessler v. Fanning*, 953 S.W.2d 515, 522 (Tex.App.- Fort Worth 1997, no pet.); *Diamond Offshore Services Ltd. v. Williams,* 542 S.W.3d 539, 550, n. 40 (Tex. 2018). Indeed, in considering its worth to the jury, it has been expressly held by the Texas Supreme Court that: "If, as it is often said, a picture is worth a thousand words, then a video is worth exponentially more. Images have tremendous power to persuade, both in showing the truth and distorting it. A video can be the single most compelling piece of evidence in a case, captivating the jury's attention like no other evidence could. Video can often convey what an oral description cannot—demeanor, personality, expressions, and motion, to name a few. (Numerous footnote case citations omitted)." *Diamond Offshore Services Ltd. v. Williams,* 542 S.W.3d 539, 542 (Tex. 2018). Thus, for Defendant to pretend that such video doesn't exist even as it proves quite convincingly that Defendant's store lights were not fully on and that it was darker than is safe in the aisle at issue is remarkably noteworthy to say the least. *See Odyssey Marine Explora., Inc. v.*

---

[3] For just a single instance thereof, in store manager Zuniga's Incident Report, he states that, "Customer[']s shoes were in poor condition." (Id., at 3). Yet, in his discovery deposition, (Response App. Ex. A), Plaintiff expressly testified that the tennis shoes he was wearing when he fell were in "100% condition" because he's a "tennis shoe freak." (Id., 50:20-51:1). Such disparate descriptions of his shoes create classic issues of material factual dispute and credibility for the jury. *See Digital Filing Systems, L.L.C. v. Mims,* No. 4:05cv465, 2007 WL 2692044, *2, (mem. op.), (E.D. Tex. Sept. 11, 2007)("Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Lincoln Gen. Life Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An issue as to a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir.2004) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The evidence must be construed in a light most favorable to the nonmoving party and doubts resolved in its favor. *Id.*").

*Shipwrecked and Abandoned SS Mantola,* 425 F.Supp.3d 287, 292-3 (S.D.N.Y. 2019)("In evaluating a motion for summary judgment, the court may choose to draw an adverse inference against parties who fail to produce requested evidence. *See Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 54 (S.D.N.Y. 2014) (noting that courts can issue adverse inference instructions for both spoliation and non-production of evidence). 'District courts have "broad discretion" in determining whether to grant an adverse inference.' *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 452 (S.D.N.Y. 2012), *aff'd*, 511 F. App'x 57 (2d Cir. 2013) (citing *Glover v. Costco Wholesale Corp.*, 153 F. App'x 774, 776 (2d Cir. 2005)).").

8.      Indeed, if Kroger had a plausible explanation of what this truly significant evidence shows and why ***its own video confirming darkened in-store conditions*** does not manifestly support its premises liability and common law negligence, and if Kroger had a plausible explanation of why its stocker working within three to four feet of where Plaintiff fell right after said employee directed Plaintiff to the location, without said worker's seeing the fluid in which Plaintiff fell and either marking it or cleaning it up before he did so, its instant MSJ surely would have presented that. Since it obviously does not have one, it chooses to completely ignore the existence of such video and the proximate presence of its employee. Hence, this is not a premises owner's alleged-constructive-knowledge-of-a-defect case. Instead, it is a case not only where Kroger's employees actually knew about the condition which gave rise to Mr. Jones' injury, but Kroger's own managers and/or employees actually created and/or permitted to continue the unreasonably dangerous

9.      condition which injured him – manifestly deficient lighting in the area where he fell and failing to see and mark or clean up the fluid in which he fell.[4]

10.      Kroger's instant MSJ presents no contention of evidence that Plaintiff or any other customer or non-employee spilled anything where he fell in the time between when the store's employee pointed him towards the vinegar bottles on the shelf and he fell in fluid on the floor. Thus, the fluid had to have existed on the floor before Plaintiff entered the aisle. The employee was stocking the shelves right in the same area and either the employee was negligent in failing to see the fluid on the floor within three or less feet away from him, or he spilled it onto the floor or he couldn't see the fluid on the floor because Kroger negligently failed to turn on all of the store's lights before it permitted patrons like Plaintiff to enter it. In either of these scenarios, Kroger can and should be held liable for Plaintiff's fall and injury. To deal with that obvious result, Kroger simply ignores the presence of the employee and the existence of its damning store video all together. In such circumstances, to the extent that Kroger's instant MSJ seeks summary dismissal of those claims, it should be denied.

11.      In seeking such a result, Plaintiff Mr. Jones by no means asks this Court to let him win this case, he only requests that it permit him to have his day in court so that the jury may consider his common law active negligence and premises liability claims on their merits, win or lose.

---

[4] *See Digital Filing Systems, L.L.C. v. Mims,* No. 4:05cv465, 2007 WL 2692044, *2, (mem. op.), (E.D. Tex. Sept. 11, 2007)("Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Lincoln Gen. Life Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An issue as to a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir.2004) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The evidence must be construed in a light most favorable to the nonmoving party and doubts resolved in its favor. *Id.*").

# V.
## MSJ RESPONSE EVIDENCE

12.     Pursuant to this Court's Procedure VII.C, in Plaintiff Mr. Jones' concurrently filed Appendix in

support of this MSJ Response, ("App."), Plaintiff provides this Court with the following bookmarked

Response Exhibits in admissible form,[5] which are hereby adopted and incorporated herein and made a part

hereof as if set out in full, pursuant to Fed. R. Civ. P. 10(c):[6]

1) Response App. Ex. "A" – Copy of the complete transcript of Plaintiff Anthony Jones' discovery deposition, dated September 30, 2022;[7]

2) Response App. Ex. "B" – Copy of Defendant Kroger's in-store surveillance video of the store aisle at issue, dated July 1, 2020, entitled "SlipFallAJ070120," produced by Kroger during written discovery herein to date and Bates-marked for identification by Kroger, as KROGER/JONES 000144;

3) Response App. Ex. "C" – Copy of Defendant Kroger's Incident Report, dated July 1, 2020, completed by its store manager Richard Zuniga, produced by Kroger during written discovery to date and Bates-marked for identification by Kroger, as KROGER/JONES 000001-3;

4) Response App. Ex. "D" – Copy of Defendant Kroger's purported "Customer Statement which is dated July 1, 2020, but filled out in the same handwriting as was Kroger's Incident Report completed by its manager Zuniga, and which is manifestly incomplete and unsigned by Plaintiff, produced by Kroger during written discovery to date and Bates-marked for identification by Kroger, as KROGER/JONES 000004-5;

5) Response App. Ex. "E" – Copy of Defendant Kroger's "Evidence Report," dated July 24, 2020, twenty-three days after Plaintiff's July 1, 2020 fall and injury, Kroger's store manager retrieved and reviewed the store surveillance video provided in Response App. Ex. C;

---

[5] See Fed. R. Civ. P. 56(c)(2). *See also D'Onofrio V. Vacation Publications, Inc.,* 888 F.3d 197, 208 (5th Cir. 2018)("At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be *capable* of being "presented in a form that would be admissible in evidence." ' (Citations omitted).").

[6] *See also Carroll v. Fort James Corp.,* 470 F.3d 1171, 1176 (5th Cir. 2006)("The Federal Rules of Civil Procedure specifically allow for incorporation by reference …").

[7] Citations to depositions will be by Ex. Number, page and line, i.e. ( Ex. ___, (or Id.), 5:6-7). Mr. Jones was agreeably produced for his discovery deposition and all questions were asked by defense counsel and he decided which questions to ask or not ask. (Response App. Ex. A, 6:1-4; 88:12). At trial, his testimony will be far more organized and succinct.

6) Response App. Exs. "F-1 and F-2" – Copies of two photographs of aisle 9 of the store at issue, dated July 27, 2020, taken by Kroger twenty-six days after Plaintiff's July 1, 2020 fall and injury, produced by Kroger during written discovery to date and Bates-marked for identification by Kroger, as KROGER/JONES 000142-3; and,

7) Response App. Ex. "G" – Copy of Defendant Kroger's Responses to Plaintiff's First Set of Requests for Admission, at Nos. 7, 9, 10, 11, 12, 13, 14, 15, 16, 40, 41, 42, 43, dated March 14, 2022.

**VI.**
**SUMMARY OF MSJ RESPONSE FACTS**

13.     In Plaintiff Mr. Jones' discovery deposition, (Response App. Ex. A), he testified in critically relevant part that he was born on May 25, 1962, and is presently sixty years old. (Id., 12:11-17). At the time of his injury on July 1, 2020, he was fifty-eight. (Id., 12:15). He is a veteran of the U.S. Army, (three years). (Id.,, 13:24-14:1; 14:14). He was honorably discharged. (Id., 15:7-10). He has lived in Houston since 2012, but has moved around some during that time as well. (Id., 16:10-18). He graduated from ITT Tech in Indiana in 2013. (Id., 16:21-17:1). He has a graduation certificate in business management. (Id., 17:3). He was married from 1986, through 2005. He is divorced. (Id., 19:2-12). He has three children, all grown. (Id., 19:21). He retired in December, 2020. (Id., 22:18-21; 23:16-19). He was, before that, a warehouse manager. (Id., 22:24). He lives on a VA disability pension. (Id., 29:1-5). He attends church every Sunday. (Id., 29:6-8). H has never been in a lawsuit before. (Id., 31:16-19). He does not drink. (Id., 35:14-15). He was convicted of a drug charge in 1994, but completed probation and has never had any other problems. (Id., 36:6-24).

14.     He was injured on July 1, 2020. (Id., 37:18-23). He went to Kroger's store early because he likes to shop before 8:00 am. (Id., 38:1-3). He went for apple cider vinegar. 38:3-4). He didn't know where it was on the shelf so he asked a stocker who was stocking the shelves there where it was and the young man pointed to it. (Id., 38:9-11; 41:1-5). He picked up a bottle of vinegar and turned to put it in his shopping cart and his feet went out from underneath him and he landed sitting on the floor with his legs up underneath the cart. (Id., 38:11-16; 41:17-25). This occurred close to the end of the aisle. (Id., 39:24). The stocker was still within three or four feet of him when he fell. The stoker was right there to whole time. (Id., 40:10-20). He was not on his

8

cell phone when he fell. (Id., 41:8-11). He fell "in something wet on the floor." (Id., 42:16). He is not sure what it was. (Id., 42:19). He did not see it before he fell in it. (Id., 42:22; 43:25-44:1). Once he fell in the fluid he could feel in on his hands. (Id., 43:5-8). The fluid had no color or odor. (Id., 44:2-7). The worker right beside him saw him fall and helped him up. (Id., 44:14-21). What he fell in was definitely a liquid. (Id., 44:25-45:1). He hit his lower back on the floor. (Id., 45:5). He was wearing tennis shoes at the time which were in "100% condition" because he's a "tennis shoe freak." (Id., 50:20-51:1). He wears prescription glasses and had them on at the time. (Id., 51:9-14). The stocker should have known about the fluid on the floor because "he was right there" and that was part of his "doing his job." (Id., 52:9-21). The stocker walked with him to the front of the store, pushing his cart for him. When he got there he waited for the manager to come. (Id., 54:10-15). He waited for twenty minutes. (Id. 54:18). He didn't ask him if he was okay or anything. He just told him to fill out an accident form. He was in a hurry because the store wasn't fully open yet and it wasn't ready to open. (Id., 55:25-56:5).

15.     In Defendant Kroger's Incident Report, dated July 1, 2020, completed by its store manager Richard Zuniga, (Response App. Ex. C, also included in Kroger's App. Tab C), confirms that Plaintiff fell and was injured at 7:21 am, which accords with Plaintiff's testimony that he went to the store very early. In order to get through the store to aisle 9, where he fell, he would have had to have entered the store at around 7:10 am, a mere ten minutes or so after the store's customer doors were opened. According to Kroger's official Internet website, https://www.krogerkrazy.com/kroger-store-hours/,[8] Kroger issued an online posting dated June 12, 2020@6:15pm, entitled, "UPDATE: Most Kroger Stores Operating at NORMAL Business Hours!" This was during the early stages of the very serious Covid-19 pandemic which roiled virtually all aspects of the

---

[8] Site last visited 10/24/22.

16.     commercial business of this state for over two full years, and continues to impact such.[9] Many stores in Texas had closed to customer foot traffic and other had limited hours and heavy safety conditions for the entrance of customers. In its stated June 12, 2020 posting, Kroger stated that its business hours for all Kroger owned and operated stores in its "Houston, Tx Region," [which includes its stores in Cypress, Texas, particularly including Store No. 352 at issue], were: "7am -11pm." (Id.). Thus, once again, Plaintiff entered the store very shortly after it opened.

17.     Defendant Kroger's Incident Report, (Response App. Ex. C), is significant in other ways as well, both for what it does say and what it does ___not___ say. **First,** nowhere in the Incident Report, (or in Kroger's MSJ either), is there any mention whatsoever of the store employee who was in aisle 9 restocking shelves, who directed Plaintiff to where the vinegar was on the shelves less than a minute before he fell, and remained standing three to four feet away from Plaintiff when he fell and then helped him up off the floor. As this was Kroger's only eye-witness to Plaintiff's fall and injury, it is astonishing that he is never once mentioned. **Second,** store manager Zuniga asserts that there were "no spills or trash in section where customer fell," (Id., at 000002), yet Zuniga took no photos of the area to confirm the absence of "spills." Moreover, at most such contention is disputed by Plaintiff in his deposition testimony that he clothes were wet when he stood up after his fall, which creates issues of material factual  dispute and credibility for the jury. **Third,** as stated *supra*, Zuniga's Incident Report states that, "Customer['s shoes were in poor condition." (Id., at 000003). Yet, in Plaintiff's discovery deposition, (Response App. Ex. A), Plaintiff expressly testified that the tennis shoes he

---

[9] On March 13, 2020, the Texas Supreme Court issued its "First Emergency Order Regarding the Covid-19 State of Disaster," Sup. Ct. Misc. Docket No. 20-9042. Over the course of the ensuing twenty-nine months, the Supreme Court has issued a total of fifty-three such Emergency Orders, including the Court's "Eighth Emergency Order Regarding the Covid-19 State of Disaster," Sup. Ct. Misc. Docket No. 20-9051, dated April 1, 2020, the Court's "Twelfth Emergency Order Regarding the Covid-19 State of Disaster," Sup. Ct. Misc. Docket No. 20-9059, dated April 27, 2020, the Court's "Seventeenth Emergency Order Regarding the Covid-19 State of Disaster," Sup. Ct. Misc. Docket No. 20-9071, dated May 26, 2020, the Court's "Eighteenth Emergency Order Regarding the Covid-19 State of Disaster," Sup. Ct. Misc. Docket No. 20-9080, dated June 29, 2020, and many other leading up to Plaintiff's injury date of July 1, 2020. All of said Emergency Orders may be found online at: https://www.txcourts.gov/supreme/administrative-orders/2020/ TJB | SC | Administrative Orders | 2020 (txcourts.gov).

was wearing when he fell were in "100% condition" because he's a "tennis shoe freak." (Id., 50:20-51:1). Such disparate descriptions of his shoes likewise create classic issues of material factual dispute and credibility for the jury. **Fourth,** Kroger's own form for its Incident Report clearly states: " Remember to check video and to forward photos." (Id.). Manifestly, in completing the Incident Report, Zuniga ignored the store's surveillance video and took no photos of the injury area.

18.     Defendant Kroger's "Evidence Report," dated July 24, 2020, twenty-three days after Plaintiff's July 1, 2020 fall and injury, (Response App. Ex. E), confirms that Kroger's store manager Zuniga waited over three full weeks before he finally got around to retrieving and reviewing the store surveillance video provided in Response App. Ex. C. He made no notes during his review thereof so the video should and must speak for itself. More, Zuniga either didn't really look at the video or in reviewing it he could not have missed the stark change in the store's overhead lighting in the area at issue. Further, such evidence was well known to Kroger long before it filed its instant MSJ which ignores the video entirely.

19.     Defendant Kroger's in-store surveillance video of the store aisle at issue, dated July 1, 2020, entitled "SlipFallAJ070120," produced by Kroger during written discovery herein to date and Bates-marked for identification by Kroger, as KROGER/JONES 000144, (Response App. Ex. B), which Kroger's instant MSJ makes absolutely no mention of, depicts the area at the end of aisle 9, where Plaintiff fell, from 7:20:59 am, through 09:21:18 am, on "07-01-2020," or a period of roughly two hours. ***The start time of such surveillance video is significant because it was not turned on until very shortly after Plaintiff's fall and injury as such incident nowhere appears in the video, at "7:21 am," the time of injury according to Zuniga's Incident Report. (Id., at 000001). However, what the surveillance video shows beyond rational contest is a stark change in the overhead lighting in that area of the store at "08:24:43 am," approximately and hour and three minutes after Plaintiff fell and was injured. Indeed, the lighting in the area is cave-like around the time the video starts, at 07:20:58 am, and remains so until 08:24:43 am, at which time the lights become***

11

*considerably and quite noticeably brighter. Such video confirmation supports Plaintiff's liability contention entirely that the store's lights had not been completely turned on before Plaintiff entered the store at around 7:10 am, or before when he fell at about 7:21 am. Bearing in mind that only Kroger's managers and employees controlled the store's overhead lighting and customers had no access to such controls whatsoever, it is remarkable indeed that neither Kroger's Incident Report nor its instant MSJ make any mention of or provide any explanation of this critical and damning evidence whatsoever!*

20.     That's also quite significant because in written discovery responses because two photographs of aisle 9 of the store at issue, dated July 27, 2020, taken by Kroger twenty-six days after Plaintiff's July 1, 2020 fall and injury, produced by Kroger during written discovery to date and Bates-marked for identification by Kroger, as KROGER/JONES 000142-3, (Response App. Exs. F-1 and F-2), show the aisle so brightly lit that the overhead lights above it reflect back off the linoleum flooring. Plaintiff respectfully requests this Court to compare such photos with the cave-like lighting in the exact same area around the time the store surveillance video, (Response App. Ex. C), starts, at 07:20:58 am, and remains so until 08:24:43 am, at which time the lights become considerably and quite noticeably brighter. Such video confirmation supports Plaintiff's liability contention entirely that the store's lights had not been completely turned on before Plaintiff entered the store at around 7:10 am, or before when he fell at about 7:21 am. Even the video machine was not turned on until 7:20:58 am. Had the overhead lights been turned on, the area would have had the "bright-as-day" appearance it does in the belated photos, (Response App. Exs. F-1 and F-2). Such proper lighting would have made it vastly easier for both Plaintiff and the nearby store employee to see the liquid on the floor and for the employee to either properly safety mark it or clean it up and for Plaintiff to avoid it. Without such adequate and proper lighting, the aisle was quite literally a disaster waiting to happen, which very likely explains why Kroger's store manager took no photos of the area, and Kroger's Incident Report, (Response App. Ex. C), and its instant MSJ both completely ignore it!

21.     Defendant Kroger's purported "Customer Statement which is dated July 1, 2020, but filled out in the same handwriting as was Kroger's Incident Report completed by its manager Zuniga, and which is manifestly incomplete and unsigned by Plaintiff, produced by Kroger during written discovery to date and Bates-marked for identification by Kroger, as KROGER/JONES 000004-5, is equally suspicious because nowhere includes any description of Plaintiff's fall and injury.

22.     In Defendant Kroger's Responses to Plaintiff's First Set of Requests for Admission, at Nos. 7, 9, 10, 11, 12, 13, 14, 15, 16, 40, 41, 42, 43, dated March 14, 2022, Kroger admitted the following: (1) Kroger leased and operated the store premise at issue on the date of injury, (Id., at Nos. 7, 9, 10, 13, 14, 15, 16); (2) Kroger maintained the lighting inside the store premise at issue on the date of injury, (Id., at Nos. 11, 12); (3) Kroger maintained the store premise at issue on the date of injury, (Id., at No. 40); and, (4) Kroger's employees cleaned the store premise at issue on the date of injury, (Id., at Nos. 41, 42, 43). Nowhere in its instant MSJ does Defendant Kroger contest that Plaintiff was an invitee in its store at the time of his injury. Likewise, nowhere in said MSJ does Kroger contend that Plaintiff caused the spill in which he fell or that he had any control whatsoever over the overhead lighting inside the store or the store's surveillance video.

23.     Based upon such facts, Plaintiff Mr. Jones has presented more than a scintilla of credible, admissible, material evidence in support of his *prima facie* active negligence and premises liability claims asserted against Kroger; and, Kroger's instant MSJ has shown zero justification for this Court's summary adjudication of either claim in Kroger's favor. In Section VIII of this Response, Plaintiff will explain why the same is true as a matter of law, as well.

## VII.
## SUMMARY JUDGMENT STANDARD

24.     Kroger's instant MSJ's two paragraph statement of the standard of review applicable to a Fed. R. Civ. P. 56 summary judgment analysis, (Id., at 3-4), is incomplete. Therefore, Plaintiff Mr. Jones succinctly provides the following.

25.     Fed. R. Civ. P. 56(a) permits moving for summary judgment, which "shall be granted" *if* "the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Id. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) and *Celotex Corp. v. Catrett,*

477 U.S.317, 322 (1986), primarily control the analysis thereof. In *Tolan v. Cotton,* 134 S. Ct. 1861, 1866

(2014), the Supreme Court reiterated that:

> ***"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary
> judgment…*** This… is simply an application of the more general rule that ***a 'judge's
> function' at summary judgment is not 'to weigh the evidence and determine the truth of
> the matter but to determine whether there is a genuine issue for trial.'*** *Anderson,* 477 U.S.,
> at 249. Summary judgment is appropriate only if 'the movant shows that there is no genuine
> issue as to any material fact and the movant is entitled to judgment as a matter of law.' Fed.
> Rule Civ. Proc. 56(a). In making that determination, ***a court must view the evidence 'in the
> light most favorable to the opposing party.'*** … see also *Anderson, supra,* at 255. (Citations
> omitted, emphasis added)."

*Tolan,* at 1866. *See also Trent v. Wade,* 776 F.3d 368, 377 (5th Cir. 2015)("[W]e 'may not resolve genuine

disputes of fact in favor of the party seeking summary judgment.' [citing *Tolan*]."); *McMurray v. ProCollect,*

*Inc.,* 687 F.3d 665, 669 (5th Cir. 2012)(" 'A summary judgment motion is properly granted only when,

viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'

(Citation omitted)."); *and, Apache Corp. v. W&T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010)("[T]he

court views all facts and evidence in the light most favorable to the non-moving party.").[10]

---

[10] *See also **Caboni v. Gen. Motors Corp.,*** 278 F.3d 448, 451 (5th Cir. 2002)(" 'Summary judgment is proper only "if
the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
' ***Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,*** 229 F.3d 478, 482 (5th Cir.2000)… In making this assessment,
this court will not weigh the evidence or evaluate the credibility of witnesses. (Citations omitted)."); ***Apache Corp. v.
W&T Offshore, Inc.,*** 626 F.3d 789, 793 (5th Cir. 2010)("[T]he court views all facts and evidence in the light most
favorable to the non-moving party,"); *and Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 454 (5th
Cir.2005)("When reviewing summary judgment decisions, we construe all facts and inferences in the light most
favorable to the non-moving party.").

26.     Additionally, "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* at 248. *See also United States v. Renda,* 709 F.3d 472, 478 (5th Cir. 2013)("A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' [Citing *Anderson,* at 248]."); ... (" '[T]he party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact..." ' ... A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. ... A fact issue is 'material' if its resolution could affect the outcome of the action. ... (Citations omitted)."). *See also **Grynberg v. BP P.L.C.,*** 855 F.Supp. 2d 625, 640 (S.D. Tex. 2012) *aff'd,* 527 Fed.Appx. 278 (5th Cir. June 7, 2013)(" 'A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'(Citation omitted)."); and, ***Rice v. ReliaStar Life Ins. Co.,*** 770 F.3d 1122, 1129 (5th Cir. 2014)("... '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' *Anderson,* 477 U.S. at 255.").

## VIII.
## ANALYSIS, ARGUMENT AND AUTHORITIES

A. **Plaintiff Mr. Jones is permitted by Texas law to assert concurrent claims based upon premises liability and common law negligence:**

27.     Kroger's contention that Plaintiff is limited to asserting a premises liability claim only is incorrect, as explained in *West v. SMG,* 318 S.W.3d 430, 438 (Tex.App.- Houston [1ˢᵗ Dist.] 2010, no pet.):

> " 'Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred.' ... In the case of an invitee, such as West, a premises liability inquiry focuses on whether the defendant proximately caused the plaintiff's injuries 'by failing to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that it knew about or should have known about.' ... By contrast, '[r]ecovery on a negligent activity theory requires injury by or as a contemporaneous result of the activity itself—not a condition created by the activity.' ... Negligence and premises liability are independent theories of recovery, and the

15

Texas Supreme Court has held, 'We have rejected attempts to blur the distinctions between [negligence and premises liability] claims.'… (Citations omitted)."

*West,* at 438.

28.     As summarized *supra,* Plaintiff Mr. Jones herewith presents admissible evidence that: (1) the store had just opened before Plaintiff entered it to shop; (2) that the store was not fully opened yet; (3) the store's overhead lights were not all fully on; (4) it was improperly and unsafely dark in the aisle where Plaintiff fell, a condition verified by Kroger's own store video, (Response App. Ex. B); (5) Kroger completely ignores the very real probability that the stocker with whom Plaintiff talked within a minute of his fall actually created the fluid on the floor in which Plaintiff slipped and fell by spilling that fluid as he stocked bottles in the aisle; (6) while the core contention of Kroger's instant MSJ is that Plaintiff's negligence and premises liability claims must fail because Plaintiff cannot state who put the fluid on the floor or how long it had been there and such factors might be significant in a typical premises liability case, they matter little here because Kroger's own negligent employee in probability actually caused the condition in which Plaintiff fell or he negligently failed to see and correct it before Plaintiff fell; and, (7) even if said employee didn't create the spill, the store's managers and employees made such spill virtually impossible to see because the store's lights were not fully on yet, which condition Kroger had exclusive control over and may properly be held liable for.

29.     Had Kroger not negligently failed to turn on all of the store's lights before customers entered it Plaintiff would not have slipped and fallen and become injured, as discussed *supra.* That is an active negligent activity claim and it is entirely *prima facie* valid. *Concurrently,* Plaintiff asserts a premises liability claim based upon the exact same liability facts. That is an entirely separable *and separate* claim from Plaintiff's negligent activity claim; and, the assertion of both concurrently is permissible.

30.     In support thereof, *Primoris Energy Services Corp. v. Myers,* 569 S.W.3d 745, 755-56 2018 (Tex.App.- Houston [1st Dist.] 2018, no pet.), made clear that while negligence claims and premises liability claims differ there is no prohibition against bringing such claims simultaneously:

16

"The elements of a negligence cause of action consist of the 'existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.' … (internal quotations omitted [in orig.]). 'A general contractor in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect.' ... 'Negligence and premises liability claims ... are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor.' … 'Underpinning the distinctions between these claims is the principle that "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." ' … *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) ('When distinguishing between a negligent activity and a premises defect, this Court has focused on whether the injury occurred by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect.'). (Case citations omitted)"

*Primoris Energy Services Corp.,* at 755-56.

31.    Similarly, *Haney v. Jerry's GM, Ltd.,* 346 S.W.3d 597, 599-600 (Tex.App.- El Paso 2009, no pet.), held: "An owner or occupier of land has a duty to use reasonable care to keep premises under his control in a safe condition. *Sibai v. Wal–Mart, Stores, Inc.,* 986 S.W.2d 702, 705–06 (Tex.App– Dallas 1999, no pet.). The owner may be found liable for negligence in situations arising from a premises defect and an activity or instrumentality. *Id.*" *Id.,* at 599. The CoA by no means held that the two sorts of claims may not be simultaneously asserted, it only held that ice on a car dealership's driveway was a defective premises condition, not a hazard caused by negligent activity. *Id.,* at 601. That has nothing to do with this Court's instant analysis.

**B.   Plaintiff Mr. Jones states a viable *prima facie* premises liability claim:**

32.    Kroger's liability analysis is fundamentally and fatally incomplete in the face of the ***entire facts*** of this case. In *United Scaffolding, Inc. v. Levine,* 537 S.W.3d 463, 473, 474 (Tex. 2017), the Texas Supreme Court reiterated that:

"Generally, an owner or occupier of property has a duty to keep the premises under its control in a safe condition. … the duty owed to Levine as an invitee would be 'to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not.' … This duty is imposed on owners,

17

occupiers, or persons in control of the premises because they are 'typically in a better position than the invitee to be aware of hidden hazards on the premises.' ... (Citations omitted)."

*Id.,* at 473, 474.

33.     Again, Kroger's core contentions are that Plaintiff has produced no proof of how the fluid got onto the floor, how long the fluid he slipped and fell in was on the floor or that Kroger actually knew about it. However, *such contentions ignore the virtual certainty that Walmart's own employees created or substantially contributed to creating the slippery condition in which Plaintiff fell.* Moreover, without question, Kroger is solely responsible for the inadequate lighting in the area of Plaintiff's fall.

34.     Plaintiff contends that the lead Texas case on premises liability, *Wal-Mart Stores, Inc. v. Reese,* 81 S.W.3d 812, 814 (Tex. 2002). There, the Court relevantly held:

> "To prevail, Reece had to prove, among other things, that Wal–Mart had actual or constructive notice of the spill. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores Inc.,* 648 S.W.2d 292, 295–96 (Tex.1983). A slip-and-fall plaintiff satisfies the notice element by establishing that (1) ***the defendant placed the substance on the floor**... See Gonzalez,* 968 S.W.2d at 936; *Keetch,* 845 S.W.2d at 265. (Emphasis added)."

*Id.,* at 814. *See also Brookshire Bros., Ltd. v. Aldridge,* 438 S.W.3d 9, 15-16 (Tex. 2014)(same [citing *Reese*]).

35.     Based thereupon, if Kroger's employees created the dangerous condition that caused Plaintiff to slip and fall the premises liability changes entirely to one which Kroger's MSJ ignores entirely. Here, there is clear evidence that ***not only did Kroger's employees ignore the unreasonably dangerous hazard in which Plaintiff slipped and fell, they created it.*** The usual premises liability case law addresses only the situation where the store contends it was unaware of the existing condition which causes injury. The law applicable to the situation where the store actually creates the condition giving rise to injury is quite different. Per *Reese,* 81 S.W.3d, at 814, if Kroger's employees actually caused the slippery condition in which Plaintiff fell, and/or created the deficient overhead lighting, then his *prima facie* premises liability claim is manifestly viable.

36.     This is confirmed by the Fifth Circuit's decision in *Garcia v. Wal-Mart Stores Texas, L.L.C.,* 893

F.3d 278, 278-9, 279-80 (5th Cir. 2018), wherein the Circuit considered a defect actually created by the

premises owner:

> "Texas requires an invitee to prove four elements on a premises-liability claim: that '(1) the
> property owner had actual or constructive knowledge of the condition causing the injury; (2)
> the condition posed an unreasonable risk of harm; (3) the property owner failed to take
> reasonable care to reduce or eliminate the risk; and (4) ... the risk was the proximate cause of
> injuries to the invitee.' *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014). In **Reece,
> 81 S.W.3d at 814**, the Texas Supreme Court explained that a plaintiff can prove knowledge,
> the first element, by showing that ***(a) 'the defendant placed the substance on the floor'; (b)
> 'the defendant actually knew that the substance was on the floor'***; or (c) 'it is more likely
> than not that the condition existed long enough to give the premises owner a reasonable
> opportunity to discover it.' *See also McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358
> (5th Cir. 2017). ***To prove any of these three propositions, '[p]laintiffs may rely upon [either]
> direct [or] circumstantial evidence.'*** *Id.* at 358–59 (quotations and citations omitted [in
> orig.]). (Emphasis added)."

*Garcia,* at 279. On the basis of the foregoing, the Circuit reversed the trial court's summary judgment and

remanded the case. *Id.,* at 282.

37.     Similarly, in *Bellamy v. Wal-Mart Stores, Texas, LLC,* C.A. No. SA-18-CV-60-XR, 2019 WL

3936992, *5, (slip op.), (W.D. Tex. Aug. 19, 2019), the court held:

> " 'Texas requires an invitee to prove four elements on a premises-liability claim: that "(1) the
> property owner had actual or constructive knowledge of the condition causing the injury; (2)
> the condition posed an unreasonable risk of harm; (3) the property owner failed to take
> reasonable care to reduce or eliminate the risk; and (4) ... the risk was the proximate cause of
> injuries to the invitee." ' *Garcia v. Wal-Mart Stores Texas, L.L.C.*, 893 F.3d 278, 279 (5th
> Cir. 2018) (*citing Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014)). ***'[T]he Texas
> Supreme Court explained that a plaintiff can prove knowledge, the first element, by
> showing that (a) the defendant placed the substance on the floor;* … *To prove any of these
> three propositions, plaintiffs may rely upon either direct or circumstantial evidence.'*** *Id.* at
> 278. (Emphasis added)."

*Id.,* at *5. *See also **Dominquez v. Target Corp.,*** C.A. 5:18-CV-23, 2019 WL 1004569, *4, (slip op.), (S.D.

Tex. Feb. 8, 2019)(same); and, ***Rosario Dominguez v. Target Corp.,*** C.A. No. 5:18-CV-23, 2018 WL

8583800, *2, (slip op.), July 25, 2018)("The Texas Supreme Court has explained that a slip-and-fall plaintiff

can prove a defendant's actual or constructive knowledge of water on the floor 'by establishing that (1) the

defendant placed the substance on the floor… A plaintiff may rely on either direct or circumstantial evidence to prove any one of these propositions. *Garcia*, 893 F.3d at 279.").

38.    Here, as stated *supra,* the evidence above summarized clearly shows that: (1) the store had just opened before Plaintiff entered it to shop; (2) that the store was not fully opened yet; (3) the store's overhead lights were not all fully on; (4) it was improperly and unsafely dark in the aisle where Plaintiff fell, a condition verified by Kroger's own store video, (Response App. Ex. B); (5) Kroger completely ignores the very real probability that the stocker with whom Plaintiff talked within a minute of his fall actually created the fluid on the floor in which Plaintiff slipped and fell by spilling that fluid as he stocked bottles in the aisle; (6) while the core contention of Kroger's instant MSJ is that Plaintiff's negligence and premises liability claims must fail because Plaintiff cannot state who put the fluid on the floor or how long it had been there and such factors might be significant in a typical premises liability case, they matter little here because Kroger's own negligent employee in probability actually caused the condition in which Plaintiff fell or he negligently failed to see and correct it before Plaintiff fell; and, (7) even if said employee didn't create the spill, the store's managers and employees made such spill virtually impossible to see because the store's lights were not fully on yet, which condition Kroger had exclusive control over and may properly be held liable for.

    **C.   Plaintiff Mr. Jones has established *prima facie* causation as to premises liability:**

39.    In *LMB, Ltd. v. Moreno,* 201 S.W.3d 686, 688 (Tex. 2006), the Supreme Court held that: "The elements of the Morenos' premises liability claim against LMB are that (1) LMB had actual or constructive knowledge of some condition on the premises, (2) the condition posed an unreasonable risk of harm, (3) LMB did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm, and (4) LMB's failure to use reasonable care to reduce or eliminate the unreasonable risk of harm proximately caused Ernestina Moreno's injuries. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000). The proximate cause element has two components: cause-in-fact and foreseeability. *See Marathon Corp. v. Pitzner,* 106 S.W.3d

724, 727 (Tex.2003). The test for cause-in-fact, or 'but-for' causation, is whether (1) the act or omission was a substantial factor in causing the injury and (2) without the act or omission the harm would not have occurred. *Id.*" *Id.,* at 688.

40.     Here, it is indisputable that the Mr. Jones' sworn testimony and Kroger's own surveillance video establish "but-for" causation arising from the Kroger's negligent failures. And, even if the jury ultimately decides this case against Plaintiff, the issue of Kroger's negligence and its causational role are issues for the jury to decide, not this Court in summary proceedings.

41.     Indeed, in *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 935-6 (Tex. 1998), discussed *supra,* the Supreme Court expressly held that: "The question in this slip-and-fall case is what quantum of circumstantial evidence is legally sufficient to support a finding that an unreasonably dangerous condition has existed long enough to charge a proprietor with constructive notice of the condition… We hold that when circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Id.,* at 935-6.

42.     In *Rodriguez v. Cemex, Inc.,* 579 S.W.3d 152, 164 (Tex.App.- El Paso 2019, no pet.), the CCA held: "[F]oreseeability is required to establish proximate cause, but it is also a key part of the analysis for determining whether a dangerous condition existed on the property for purposes of bringing a premises defect case. As the Supreme Court has recognized, in order to impose liability on a landowner in a premises defect case, a condition on its property must pose an 'unreasonable risk of harm,' which in turn exists 'when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." ' *Brown*, 80 S.W.3d at 556 (citing *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)); *accord City of El Paso v. Viel,* 523 S.W.3d 876, 895 (Tex.App.- El Paso 2017, no pet.)." *Id.,* at 164. Further, in *Tex. Dept. of Transp. v. Padron,* 591 S.W.3d 684, 697

(Tex.App.- Texarkana 2019, rev. denied), the CCA explained: " 'A condition is an unreasonably dangerous condition if it presents an unreasonable risk of harm.' [*Cheney,* 2018 WL 5832088]*,* at *6 (citing *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007); *Knorpp v. Hale*, 981 S.W.2d 469, 474 (Tex.App.- Texarkana 1998, no pet.) ('A dangerous condition is one which presents a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used.')). 'A condition poses an unreasonable risk of harm for purposes of premises liability when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." ' *Id.* (quoting *Cty. of Cameron*, 80 S.W.3d at 556)." *Id.,* at 697.

43.    Here, Plaintiff Mr. Jones has unquestionably presented sufficient *prima facie* evidence of both an unreasonable risk of harm and foreseeability to allow his premises liability claim against Kroger to survive summary adjudication. See ***McMillan v. Hearne,*** 584 S.W.3d 505, 514 (Tex.App.- Texarkana 2019, no pet.)("Proximate cause consists of both cause in fact and foreseeability, both of which must be shown to exist. *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935 (Tex.App.- Texarkana 1997, writ denied). Whether a particular act of negligence is a proximate cause of an injury is ordinarily a question for the jury. *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970)."); ***In re Molina,*** 575 S.W.3d 76, 82 (Tex.App.- Dallas 2019, reh'g denied, manda. denied)("Like negligence, proximate cause is ordinarily a fact question for the jury. *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex.App.- Dallas 2004, pet. denied)."); *and,* ***Univ. of Tex. M.D. Anderson Cancer Center v. McKenzie,*** 578 S.W.3d 506, 518 (Tex.2019)("Proximate cause has two components: cause in fact and foreseeability. *Id.* … proximate cause is ultimately a question for the factfinder…").

44.    In addition, it has been squarely held in Texas that: "***Proximate cause may… be established by direct or circumstantial evidence and the reasonable inferences drawn from that evidence.*** (Citations omitted, emphasis added)." *Kroger Co. v. Milanes,* 474 S.W.3d 321, 338 (Tex.App.- Houston [14th Dist.] 2015, no

pet.). *See also Russell Equestrian Ctr., Inc. v. Miller,* 406 S.W.3d 243, 249 (Tex.App.- San Antonio 2013, no

pet.)(" *'[B]oth negligence and proximate cause may be inferred from the circumstances surrounding an*

*event, so that it is not necessary to prove these elements of a cause of action by direct and positive testimony.'*

(Emphasis added, case citations omitted)."). Indeed, in *Defterios v. Dallas Bayou Bend, Ltd.,* 350 S.W.3d 659,

666 (Tex.App.- Dallas 2011, rev. denied), the CoA explained that: "Cause-in-fact means that a defendant's

act was a substantial factor in bringing about the injury which would not have occurred otherwise. *Havner v.*

*E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458–59 (Tex.1992). **The defendant's act does not have to be the**

**sole cause.** *Id.* **Cause-in-fact may be proved by direct or circumstantial evidence and inferences from the**

**evidence.** *Id.* at 459. **The inquiry is whether reasonable minds could draw an inference that the defendant's**

**wrongful conduct caused the plaintiff's damages.** *See id.* (Emphasis added)." *Id.,* at 666. Thus, Plaintiff Mr.

Jones need not produce such evidence as will convince the jury of Kroger's liability; he need only present

sufficient evidence to establish his *prima facie* premises liability claim.

45.     Plaintiff Mr. Jones vigorously contends that it is up to the jury to decide all of the foregoing factual

issues; and, no amount of hiding salient facts or intentionally skewed analysis of the actual claims he asserts

and/or the law actually applicable thereto by Kroger changes that. This is not a complicated case. Plaintiff will

testify as to how he was injured, just as he did in his deposition; and Plaintiff assumes Kroger will present its

version of the incident, (although its instant MSJ entirely fails to do so). The jury can, based thereupon, decide

if Kroger is liable or not. But, Kroger has shown zero justification for its exoneration in summary proceedings.

> **D.  Plaintiff Mr. Jones states a viable *prima facie* common law negligence claim and
> causation related thereto:**

46.     It has been squarely held in Texas that: "***Proximate cause may… be established by direct or***

***circumstantial evidence and the reasonable inferences drawn from that evidence.*** (Citations omitted,

emphasis added)." *Kroger Co. v. Milanes,* 474 S.W.3d 321, 338 (Tex.App.- Houston [14th Dist.] 2015, no

pet.). *See also Russell Equestrian Ctr., Inc. v. Miller,* 406 S.W.3d 243, 249 (Tex.App.- San Antonio 2013, no

pet.)(" *'[B]oth negligence and proximate cause may be inferred from the circumstances surrounding an event, so that it is not necessary to prove these elements of a cause of action by direct and positive testimony.'* (Emphasis added, case citations omitted)."). Indeed, in *Defterios v. Dallas Bayou Bend, Ltd*., 350 S.W.3d 659, 666 (Tex.App.- Dallas 2011, rev. denied), the CCA explained that: "Cause-in-fact means that a defendant's act was a substantial factor in bringing about the injury which would not have occurred otherwise. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458–59 (Tex.1992). *The defendant's act does not have to be the sole cause. Id. Cause-in-fact may be proved by direct or circumstantial evidence and inferences from the evidence. Id.* at 459. *The inquiry is whether reasonable minds could draw an inference that the defendant's wrongful conduct caused the plaintiff's damages. See id.* (Emphasis added)." *Id.,* at 666. Thus, Plaintiff need not produce such evidence as will convince the jury of Kroger's liability; he need only present sufficient evidence to establish his *prima facie* common law negligence claim. Here, Mr. Jones has done so, as summarized *supra.*

47.      Here, once again, Plaintiff Mr. Jones vigorously contends that it is up to the jury to decide all of the foregoing factual issues; and, no amount of hiding salient facts or intentionally skewed analysis of the actual claims he asserts and/or the law actually applicable thereto by Kroger changes that. This is a straightforward personal injury case of merit. Plaintiff will testify as to how he was injured, just as he did in his attached deposition, (Response App. Ex. A), and Plaintiff assumes Kroger will present its version of the incident, (although its instant MSJ does nothing in that regard). The jury can, based thereupon, decide if Kroger is liable or not. But, Kroger has shown zero justification for its exoneration from liability in summary proceedings.

<u>CONCLUSION</u>

For each and all of the foregoing factual reasons, and based upon the above-discussed controlling legal authority, Plaintiff Mr. Jones once again respectfully requests this Court deny Kroger's instant MSJ insofar as it seeks summary dismissal of Plaintiff's premises liability and/or common law active negligence

24

claims, as Plaintiff has herein presented far more than sufficient discovery facts and evidence to support his stated liability claims against said Defendant; and, conversely, Defendant Kroger has entirely failed to show this Court that the granting of summary judgment in its favor on either of such claims is either factually or legally justified.

Respectfully submitted,

By:  /s/ *Jeffrey N. Todd*

Jeffrey N. Todd
State Bar No. 24028048
Federal ID No. 1308

ATTORNEYS IN CHARGE FOR PLAINTIFF

OF COUNSEL:
THE TODD LAW GROUP, PLLC
12929 Gulf Freeway, Suite 301
Houston, Texas 77034
832 243-4953
713 583-7818 Facsimile
jeff@jefftoddlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded to all known counsel of record and other entities and individuals as reflected below, on this the 4th day of November, 2022 via one of the method(s) indicated:

**Earnest W. Wotring**
**Karen R. Dow**
**Aliyah Davis**
**BAKER WOTRIG LLP**
**700 JPMorgan Chase Tower**
**600 Travis Street**
**Houston, Texas 77002**
**713 583-7818 Facsimile**
**ewotring@bakerwotring.com**
**kdow@bakerwotring.com**
**adavis@bakerwotring.com**
**CM/RRR, Facsimile, Efile and/or Email**

/s/ *Jeffrey N. Todd*
Jeffrey N. Todd

26